THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MAX REIDLER, PLAINTIFF IN ERROR.

Decided March 12, 1927.

Crimes—Conspiracy—This Case is One of the Results of the Investigation Into the Prosecutor's Office in Morris County— There are Eighty-five Assignments of Error and Seventy-nine Specifications of Causes For Reversal—Many are Founded Upon Alleged Errors Which are of Precisely the Same Character as Were Those Presented and Decided in State v. Bolitho, 5 N. J. Adv. R. 251—Other Comments are Made Here at Length.

On error to the Morris County Court of Oyer and Terminer.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the plaintiff in error, *Elmer W. Romine.*

For the defendant in error, *Wildred H. Jayne.*

PER CURIAM.

The plaintiff in error was tried and convicted in the Morris County Court of Oyer and Terminer on an indictment for

conspiracy, and judgment having been pronounced on such conviction, a writ of error was sued out of this court by the plaintiff in error, to remove to it the record and proceedings for review. The case is before us not only on strict writ of error, but also under the one hundred and thirty-sixth section of the Criminal Procedure act. There are eighty-five assignments of errors and seventy-one specifications of causes for reversal. Many of the assignments and specifications are founded upon alleged errors which are precisely of the same character, involving the same legal questions as were presented to, and decided by, the Supreme Court in *State* v. *Bolitho,* not yet officially reported in the state reports, but is reported in 5 *N. J. Adv. R.* 251.

The indictment on which the plaintiff in error was convicted sets forth in the first count that he, together with Bolitho, who was at the time prosecutor of the pleas of Morris county, and Joseph Canty, wickedly, falsely, knowingly, corruptly and unlawfully, did combine, unite, confederate, conspire and bind themselves by agreement to pervert and obstruct justice and the due administration of the laws of the State of New Jersey, to wit, the "Prohibition Enforcement act," by suppressing, concealing, stifling and dismissing a complaint against Canty, and to forebear and refrain from prosecuting him, &c. The indictment then sets forth overt acts committed in pursuance of the alleged unlawful agreement.

The second count alleges the conspiracy to be to pervert and obstruct justice and the due administration of the law of the State of New Jersey, to wit, the "Prohibition Enforcement act," by unlawfully selling, bartering, transporting, importing, delivering, furnishing, manufacturing and possessing intoxicating liquor, &c., and to protect the said Canty from prosecution by reason of any violation of the said "Prohibition Enforcement act," &c.

The third count is similar in all respects to the second.

There was a challenge in writing to Mr. Justice Parker, sitting in the cause, on the ground of interest and bias. The state filed a demurrer to the challenge. This challenge was

based upon the same ground as was presented and ruled upon by the judge in *State* v. *Bolitho, supra,* in which case the Supreme Court sustained the legal propriety of the judicial action of the trial judge, in overruling the challenge, and as the facts, and the legal question springing from such facts, are the same here as those passed upon by the Supreme Court, in the quoted case, the matter is no longer open for debate in this court.

There was a motion to quash the indictment on various grounds, namely, that the indictment was found and presented by an illegally constituted grand jury, in that the members thereof were not selected and summoned under the law providing the manner in which grand jurors shall be selected and summoned, that the grand jury which found and presented the indictment against the plaintiff in error was, under the law, an unauthorized body because the members thereof were selected and summoned by elisors appointed by the trial judge for that purpose, and for which appointment of elisors and selecting and summoning of grand jurors there was no authority in law; that Mr. Jayne was without proper authority to appear before the grand jury for the purpose of presenting the evidence and for the prosecution of the indictment: that the clerk of the grand jury was illegally appointed and, hence, unlawfully in the grand jury room at the finding of the indictment; that one of the elisors was disqualified because he was a counselor-at-law; that only twenty-two members were sworn as grand jurors, &c. The trial judge denied the motion. These objections made to the present indictment are the same as were made to the indictment in the case of *State* v. *Bolitho, supra,* and received the consideration of the Supreme Court, which tribunal held the objections were without legal force and sustained the judicial action of the trial court in denying the motion to quash the indictment on the grounds presented. This decision is controlling here.

So, also, it was determined by the Supreme Court, in the Bolitho case, that it was not a ground on which error could be assigned where the trial judge refuses a writ of *certiorari* to review an indictment for insufficiency. The motion to quash

being addressed to the discretion of the court, is not appealable. In the case *sub judice* there was also a motion to quash the indictment on the ground that the counts charging conspiracy were duplicitous; that the overt acts set out were not acts which were sufficient to support a valid indictment. The refusal of the motion to quash on these latter grounds is not reviewable under the one hundred and thirty-sixth section of the Criminal Procedure act and is not reviewable on error since the motion to quash, as has been already stated, is addressed to the discretion of the court, and since there was no motion to direct a verdict on the ground of the alleged defects in the indictment and no motion made in arrest of judgment for the same reason, either of which motions, if denied, would have 'made a basis for an assignment of error on the record, the matter is not properly before us for review.

There was a motion for a severance which was consented to by counsel of defendant. The defendant was then put upon trial alone.

Now, as to the plea of second jeopardy. The record discloses that after the plaintiff in error was put on trial and considerable testimony had been taken, that Canty, one of the defendants, but who was not put on trial, and who became a witness for the state, lunched with one of the jurors while the case was in progress, and Canty paid for the juror's lunch; that this matter was called to the attention of the court, and after the hearing, and the facts being proven, counsel of defendant made this statement to the court: "If your Honor please, with all respect to the court and to the time and expense that has been consumed, it seems to me, the defendant, in the emergency, should have the benefit of a mistrial in view of what has occurred. I am sorry." The trial judge discharged the jury from further consideration of the case. The case was adjourned to the following day, and before a new jury was empaneled, counsel on behalf of the plaintiff in error filed a plea of second jeopardy, and waived the filing of a traverse, in writing, by the state in reply to the plea, and consented that it be considered that the plea was traversed by the state, and that the issue, as to whether or not

the defendant's plea was efficacious, in law, should be tried and determined by the court on the facts, as they appear of record, relating to the mistrial and discharge of the jury. The trial judge overruled the plea, and we think properly so. According to the record, a mistrial was sought and asked for by defendant's counsel, obviously, stirred by the thought that the testimony, which Canty, a co-defendant, might give as a witness for the state, and who had lunched with one of the jurors of the panel, trying the defendant, and for whose lunch Canty paid, would seriously jeopardize the liberty of the defendant, so far as that juror was concerned. The course taken by counsel of defendant in that respect is not open to fair criticism, but he having requested and invoked the granting of a mistrial for the benefit of the defendant, his conduct, by itself, constituted a waiver of the jeopardy, which the law presumes to exist when a person is put upon trial before a court of competent jurisdiction upon an indictment which is valid in law and a jury has been impaneled and sworn to try him. The fact that the trial judge did not use the language of counsel that the defendant should have the benefit of a mistrial and declare a mistrial, but in his own language said: "I am sorry, ladies and gentlemen, we have wasted a day now on account of this unfortunate mistake of one of your number. I suppose it may be partly the fault of the court not to have cautioned you not to have anything to do with any of the parties or witnesses of this case while the trial was on. The jury is discharged and the case will be called for trial tomorrow morning," is of no serious import.

The declaration of a mistrial leads to the discharge of the jury. The declaration made by the court led to the same end. We are unable to perceive that because the jury was discharged by the trial judge without the declaration that it was a mistrial how that could be of any importance or affect the legal status of the defendant since the declaration of a mistrial comprehends the discharge of the jury.

Under point five, of the brief of counsel of plaintiff in error, it is argued that the verdict was contrary to and against the weight of the evidence.

There was considerable testimony ·in the case tending to establish that the defendants had entered into a conspiracy to defeat the ends of justice, to prevent and obstruct justice and the due administration of the law. The testimony in relation to the overt acts which were committed by one or other of the defendants, to carry into operation the baneful organized purpose, can leave no doubt in a fair and impartial mind, that the unlawful acts committed by Canty or the defendants were not only encouraged by Bolitho, but that the duties of his official position, as prosecutor of the pleas, were to be and were prostrated to carry out the illegal schemes. It is only where a verdict shocks the sense of justice that a court will lend its aid to set aside such verdict. The verdict seems to us to be a fair and just one under the evidence, and, therefore, will not be disturbed.

Point six of the brief concerns itself with the refusal of the trial judge to direct a verdict of acquittal of the defendants after the close of the entire case.

What has been said respecting our reasons why a new trial should not be granted sufficiently explains that in our judgment there was ample proof which warranted a jury to find a verdict of guilty, and hence the direction of a verdict for defendant was properly denied.

Next, point seven of the brief under the caption: "Illegal evidence was admitted," is a presentation by counsel of plaintiff in error, of the assignments of errors and specifications of causes for reversal, in this fashion: "Assignments of error numbers 20, 21, 22, 23, 24, 25, 33, 35, 40, 41, 42, 43, 44, 45, 46, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62 and·63 relate to the admission and rejection of evidence by the trial court which is assigned as error and also specified in the specification of causes as cause for reversal of the conviction of plaintiff in error." "Assignments numbers 20, 21, 22, 23, 24, 25, 44 and 45 relate to the admission of evidence regarding the payment to plaintiff in error of money by the county. of Morris for his services as county detective;" and then reference is made to other assignments of errors by numbers. Nowhere in the brief is the testimony set out which it is claimed

was illegally admitted or illegally rejected. Such a manner of presenting a case is highly reprehensible. But, further, nowhere in the brief does counsel of plaintiff in error point out in what respect the court erred in the reception or rejection of testimony upon which the assignments of errors and specifications of causes for reversal are alleged to be based. The only argument advanced in support of these groups of numbers by counsel of plaintiff in error is: "the admission of such evidence bearing on upon the guilt or innocence of plaintiff in error with reference to the accusations in the indictment." Of course, if this be so, then the plaintiff suffered no harm. The brief continues: "The admission of such evidence" (bearing in mind that the testimony is not set out) "was for the purpose of creating a prejudice in the minds of the jurors." This in no way points out in what respect the court's ruling was erroneous as to the admissibility or rejection of testimony offered. The testimony might have well been competent, though prejudicial to the defendant.

We have, however, examined the assignments and specifications of causes for reversal and the testimony on which they are based and find no merit in the contention of counsel.

It is next, under point eight of the brief of counsel of plaintiff in error, alleged, in general terms, that there was error in the court's charge, which errors are exhibited by numbers 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84 and 85. The particular alleged errors in the court's charge are not pointed out. The main contention of counsel of plaintiff in error is that the comments made by the court on the evidence in the cause invaded the province of the jury and was harmful to the defendant. The court several times instructed the jury that the facts of the case were solely in its province to decide. The trial judge expressly instructed the jury as follows: "Do not take anything that I may say about the evidence as being in any way binding on you. You are the judges of this evidence, and my comments on it are mere comments, and I may be entirely wrong, both as to what evidence was given and as to the de-

ductions to be drawn therefrom; so do not consider that you are controlled in any way."

This statement amply informed the jury that it was to rely on its own recollection of the testimony in the cause and upon its own judgment as to the effect of such testimony.

Judgment is affirmed.